UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUSTIN M. P.,[1]

                           Plaintiff,                    DECISION AND ORDER

-vs-

                                                                  6:20-CV-6630 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.
_____

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Apr. 23, 2021, ECF No. 12; Def.'s Mot., Sept. 17, 2021, ECF No. 14. Plaintiff argues that the Administrative Law Judge's RFC finding is not supported by substantial evidence because the ALJ "picked and chose among the opined limitations, with no reasoning for doing so." Pl. Mem. of Law, 1, Apr. 23, 2021, ECF No. 12-1. The Commissioner disputes Plaintiff's contentions. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 12] is denied, the Commissioner's motion [ECF No. 14] is granted, and the Clerk of Court is respectfully directed to close the case.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

<u>Plaintiff's Application and the Hearing Before the ALJ</u>

Plaintiff's SSI application was completed on February 2, 2017, alleging a disability onset date of January 4, 2016. Transcript ("Tr."), 286, Feb. 19, 2021, ECF No. 10. In his application, Plaintiff alleged that his ability to work was limited by left ventricular hypertrophy, shortness of breath – limited physical activity, atrial fibrillation, and type II diabetes. Tr. 298. On February 27, 2017, the Commissioner notified Plaintiff of the Commissioner's initial determination that Plaintiff was not disabled and therefore did not qualify for SSI benefits. Tr. 206. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 218.

Plaintiff's request was approved, and the hearing was held in Rochester, New York on May 21, 2019. Tr. 16. Plaintiff appeared with counsel and an impartial vocational expert ("VE") joined by phone. Tr. 171–195. With respect to his work history and education, Plaintiff testified that he was taking his test for his GED in June, and that he had never been employed. Tr. 176–177. When asked to describe the symptoms that prevented him from working, he explained:

> I lose my breath . . . . I could be sitting perfectly still and I lose my breath. My heart . . . starts beating real fast. I just get real tired . . . out of nowhere. I have to just sit down and catch my breath.
>
> * * *
>
> [And the medication to help the heart condition] gets me dizzy.

2

Tr. 179–180. Further, Plaintiff testified that he lives with his sister, but does not do any chores or shopping because he doesn't "want to go intro the atrial fibrillation . . . ." Tr. 181–82. He stated that he doesn't have any difficulty with daily activities like bathing himself or shaving, but that he has difficulty tying his shoe or picking things up off the ground because when he bends down "I stand up and [my] heart's beating fast. Out of breath." Tr. 182. In describing his typical day, Plaintiff said that he takes classes on his tablet for a couple of hours, and then "chill[s] with my sister for the rest of the day." Tr. 185. He avoids strenuous activities because they may start his heart pounding. Tr. 189.

<u>The ALJ's Decision</u>

On July 2, 2019, the ALJ issued a decision finding that Plaintiff did not have a disability[2] under the law, and denying Plaintiff's claim for SSI benefits. Tr. 25. At step one of the Commissioner's "five-step, sequential evaluation process,"[3] the ALJ found that

---

[2] Pursuant to 42 U.S.C. § 423(d)(1)(A), a "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

[3] The Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

Plaintiff has not engaged in substantial gainful activity since the application date. Tr. 18. At step two, the ALJ determined that Plaintiff has the following severe impairments: atrial fibrillation, diabetes mellitus, and history of left ventricular hypertrophy. Tr. 18. In addition, he found that Plaintiff's medically determinable impairments of depression and a mild right trapezius strain were non-severe. Tr. 18. At step three, the ALJ found that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[4] ("RFC") to "lift 10 lbs. occasionally, and less than 10 lbs. frequently; can stand or walk 6 hours in an 8-hour day; and can sit 6 hours in an 8-hour day." Tr. 20. Based on this RFC, on Plaintiff's age and education, and on the testimony of the impartial VE, the ALJ found at step four that there were sufficient numbers of jobs in the national economy such as cashier, small product assembler, and messenger that Plaintiff could perform, even when those numbers were appropriately reduced based on Plaintiff's lifting limitations. Tr. 25. Hence, the ALJ concluded that Plaintiff *is not* disabled for the purposes of SSI. Tr. 25.

Plaintiff sought review of the ALJ's decision by the Commissioner's Appeals Council, but review was denied on June 24, 2020. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner.

---

[4] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

LEGAL STANDARD

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a disability that would entitle him or her to an award of benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). Consequently, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder

5

would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

## DISCUSSION

In the present case, Plaintiff raises a single argument for review by the Court. Plaintiff maintains that the ALJ's RFC finding is unsupported by substantial evidence because "the ALJ picked and chose among the opined limitations with no reasoning for doing so." Pl. Mem. of Law at 10. Specifically, Plaintiff argues that the ALJ improperly rejected without explanation the opinion of Plaintiff's treating cardiologist, Dr. Funderburk, that Plaintiff's cardiac symptoms were severe enough to interfere with Plaintiff's attention and concentration on a frequent basis. Pl. Mem. of Law at 12. The Commissioner counterargues that the ALJ provided good reasons for giving Dr. Funderburk's opinion only partial weight, and that Dr. Funderburk's "multiple-choice response . . . is too vague to meet [Plaintiff's] burden of proving a greater RFC." Def. Mem. in Opp., 13, Sept. 17, 2021, ECF No. 14-1.

<u>Legal Principles</u>

To determine a claimant's RFC, the ALJ must consider the claimant's physical and mental abilities, as well as his symptoms. *Glessing v. Comm'r of Soc. Sec.*, No. 21-1192, 2022 WL 457243, at *1 (2d Cir. Feb. 15, 2022) (citing 20 C.F.R. § 404.1545(b)–(e)). Even when the ALJ concludes at step two of the evaluation process that a claimant's mental impairment is non-severe, the ALJ must still account for that mental impairment when determining the claimant's RFC. *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (citing 20 C.F.R. § 416.945(a)(2)).

The claimant is responsible for providing evidence to determine his RFC. *Glessing,* 2022 WL 457243 at *1 (citing 20 C.F.R. § 404.1545(a)(3)). Thereafter, the ultimate determination of disability is a matter reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1); *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999). Thus, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002). Further, an ALJ's RFC determination need not perfectly correspond with any of the medical opinions in the record, provided he has weighed all of the evidence available to make an RFC finding that was consistent with the record as a whole. *Johnson v. Colvin,* 669 F. App'x 44, 46 (2d Cir. 2016) (citing *Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013)).

<u>Application</u>

In the present case, Plaintiff maintains that the ALJ was required to explain why his RFC findings did not "perfectly correspond" with the opinion Dr. Funderburk expressed in his May 2019 RFC questionnaire that Plaintiff's "experience of cardiac symptoms" are "frequently" severe enough to interfere with his attention and concentration. Tr. 495. Plaintiff argues that the ALJ's failure to do so renders his RFC unsupported by substantial evidence. However, after a thorough review of the parties' papers and the administrative record in this case, including Dr. Funderburk's opinion, the Court finds that the ALJ's opinion is supported by substantive evidence.

To begin with, Plaintiff incorrectly claims that the ALJ "made no specific claim that he was in any way rejecting [Dr. Funderburk's assessment of Plaintiff's attention and concentration] for any sort of inconsistency." Pl. Mem. at 12. In fact, the ALJ directly addressed why he did not fully credit Dr. Funderburk's assessment, and provided "good

7

reasons." *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). In the very same sentence in which the ALJ acknowledged Dr. Funderburk's assessment, the ALJ also noted that Dr. Funderburk "stated that [Plaintiff]'s claims are only reasonably consistent with his diagnosis." Tr. 23 (alluding to Tr. 495., where Dr. Funderburk indicated that the impairments were only "somewhat consistent" with Plaintiff's diagnosis). In addition, the ALJ noted that Dr. Funderburk assessed Plaintiff's prognosis as "good," and proceeded to list a number of physical capabilities that exceeded what the ALJ ultimately determined to be Plaintiff's RFC based on the longitudinal record. Tr. 23–24. Finally, the ALJ observed that Dr. Funderburk's residual functional assessment of the claimant was only a fill-in-the-blank questionnaire, and that Dr. Funderburk did not provide specific supportive reasoning of his opinions. Tr. 23–24. *See, e.g., Heaman v. Berryhill*, 765 F. App'x 498, 501 (2d Cir. 2019) (finding "[t]he ALJ here provided "good reasons" for giving the treating physicians' opinions less weight . . . including that their opinions were merely checkbox forms that offer little or nothing with regard to clinical findings and diagnostic results . . . .") (internal quotation marks omitted).

Besides providing "good reasons" for giving Dr. Funderburk's assessment only partial weight, the ALJ also supported his RFC determination with substantial evidence. The ALJ noted that in 2016, Plaintiff reported to his primary care provider, Dr. Kuchma, that he had been working out at the gym two times each day to lose weight (Tr. 21 citing Tr. 399–400); that Dr. Kuchma indicated in February 2017 that claimant was doing well with medications, with no evidence of recurrence of palpitations or fast heartbeat (Tr. 22, citing 381–82); and that according to Dr. Kuchma's records "claimant's symptoms continued to remain stable throughout 2017 and 2018." Tr. 22 (citing the records from Tr.

556–617). During that period, in August 2017, non-examining state agency medical consultant R. Reynolds, M.D. "assessed the [Plaintiff] could lift 10lbs occasionally, less than 10lbs frequently, could stand or walk 6 hours over an 8 hour day and sit 6 hours over an 8 hour day." Tr. 22 (citing Tr. 201).

Further, despite being unaware of the procedure at Plaintiff's hearing, the ALJ held the record open long enough thereafter to obtain evidence about Plaintiff's atrial flutter ablation in August 2018 (Tr. 22, citing 512–13). It does appear that Plaintiff experienced some "brief [heart] racing and some irregular beats randomly" following his ablation. Tr. 22 (citing Tr. 688–747). Still, the ALJ observed that less than one year after that procedure, Dr. Funderburk "opined that the claimant could sit for more than 2 hours . . . stand for more than two hours with no postural or environmental limitations . . . . [and] frequently lift over 50 lbs in a competitive work situation." Tr. 23 (citing 495–97).

Because the record contained sufficient evidence from which the ALJ could assess Plaintiff's RFC, the RFC did not need to perfectly correspond with any one particular medical opinion. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (rejecting a claimant's argument that an ALJ's RFC was not supported by substantial evidence where there was no medical opinion in the record providing the specific restrictions reflected in the ALJ's RFC). Accordingly, the Court finds that Plaintiff's challenge to the Commissioner's decision is without merit.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 12] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 14] is granted. The Clerk is directed to close this case.

SO ORDERED.

DATED:   March 16, 2022
         Rochester, New York

/s/ Charles J. Siragusa<br>
CHARLES J. SIRAGUSA<br>
United States District Judge